(No. 32120.—

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee, *vs.* ARTHUR T. GALT *et al.,* Appellants.

*Opinion filed May 22, 1952—Rehearing denied September 15, 1952.*

TUOHY & QUINN, of Chicago, (DANIEL D. TUOHY, of counsel,) for appellants.

OLIVER H. BOVIK, FRANK S. RIGHEIMER, and HERBERT C. PASCHEN, all of Chicago, (FRANK S. RIGHEIMER, JR., and PAUL B. YOULE, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal direct to this court from the circuit court of Cook County which entered a judgment order on an award of a jury in a condemnation proceeding.

It appears from the record that the Forest Preserve District of Cook County brought suit to condemn the property of Arthur T. Galt and Ida Cook Galt, hereinafter referred to as appellants, for the purpose of acquiring land to create a forest preserve. At the inception of the case the appellants filed their answer to the petition and an amended petition which had been filed, whereby they alleged themselves to be sole owners of the property. A

jury was selected to try the cause and the Forest Preserve District of Cook County, hereinafter referred to as appellee, moved for a mistrial, which was declared. Another jury was selected which, at the conclusion of the case, awarded the appellants the sum of $300,000. The appellee made a motion for a new trial which was granted. The appellants petitioned this court for leave to appeal from the order granting the new trial, which petition we denied. Thereafter, still another jury heard the cause and awarded the appellants the sum of $200,000. Appellants thereupon moved for a new trial which motion was denied by the trial court, and the judgment order in the sum of $200,137 was entered. The judgment includes interest from the date of the verdict.

The property involved in this proceeding is comprised of 121.5 acres of unsubdivided, vacant, unimproved land in an unincorporated area of Cook County immediately adjacent to Lake County. The only question involved in the trial was the amount of compensation that should be paid to the appellants as owners for the tract to be taken by the appellee. It was apparently conceded by both parties that the highest and best use to which the land could be put was for the purpose of subdivision into dwelling lots. It further appears that all of the evidence offered by either side as to market value was offered upon the theory that the property or parts thereof was suitable for dwelling purposes. The land was subject to the County Zoning Ordinance which zoned the property into an R-2 (40,000 sq. ft.) use.

The evidence also discloses that the appellant's property lies in Skokie Valley and that the lower part of the tract, about 50 acres, is overflowed with water to a depth of between 2 to 2½ feet at certain times of the year. Constant overflowing has resulted in a marsh on this particular portion of the land. This condition continued at the time of the hearing. There is evidence to the effect that while

there are subdivisions in the immediate area, the growth of such subdivisions and the immediate towns nearby has been slow.

The evidence as to valuation of the land was sharply in conflict. The witnesses for the Forest Preserve District, appellee, agreed that the property was of value between $120,000 and $135,000. The appellants' witnesses, on the other hand, testified that the property was worth between $620,750 and $677,980.

The appellants contend that the court erred in refusing to admit into evidence the sale of a strip of land from this particular property to the Public Service Company of Northern Illinois in 1941. Appellants further alleged that it was prejudicial error for the court to permit the appellee to cross-examine appellants' witnesses as to zoning ordinances of the adjacent villages and also the costs of improvements to make the land habitable. They argue that evidence of a sale by and to a person who owns a portion of the title is, in effect, a sale to oneself and should not be permitted in eminent domain proceedings to show sale of property purported to be similar to that sought to be condemned in the proceedings. This latter objection was raised by the testimony of a witness for the appellee who was a construction engineer for Northwestern University. He testified concerning the sale of 132 acres for $170,000 in 1944 to Northwestern University. The property had been owned by twelve persons of whom Northwestern University was one. Appellants further made other allegations of error concerning the ruling and instructions of the trial court.

We take notice that in this case, as in most other condemnation proceedings, there is a wide variance between the values accorded to the property by the witnesses for the appellee and the witnesses for the appellants. This variation in value is no basis for a reversal of the award of the jury in cases of this type. In the case of *Forest Pre-*

*serve Dist.* v. *Dearlove,* 337 Ill. 555, the question of a discrepancy between the jury's award of $800 an acre and the value attributed to it by certain witnesses at the trial of $3000 an acre was presented to the court. This court said in that cause, "It is the settled doctrine of this court that damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, the jury views the premises, and the amount of compensation fixed is within the range of the evidence, unless there appears to have been a clear and palpable mistake or the verdict was the result of passion and prejudice." This doctrine of law has repeatedly been followed by this court. (*Forest Preserve Dist.* v. *Kercher,* 394 Ill. 11; *Department of Public Works* v. *Diggins,* 374 Ill. 11; *Forest Preserve Dist.* v. *Collins,* 348 Ill. 477; *Jefferson Park Dist.* v. *Sowinski,* 336 Ill. 390.) It is, therefore, plain that unless a palpable mistake is apparent in the allegations of error contended for by appellants, the verdict of the jury must stand.

The appellants called a witness to testify that they sold a strip of land 200 x 200 ft. (which is the lot size advocated and limited by the Cook County ordinance) off the northwest corner of the land in question here for the sum of $8500. An objection was made to this offer of proof, which was sustained. Citing the case of *City of Chicago* v. *Harbecke,* 409 Ill. 425, appellants argue that this evidence was properly admissible. They quote that case on the theory that difference in size between the tracts was the basis for the court's refusal to hear the evidence. In that case we held that mere discrepancy in size between the tract of land in controversy and another tract will not render evidence as to the sale price of the latter inadmissible as to the value of the former.

The distinguishing factor between that case and the present case, and one which makes it inapplicable, is that there was no public utility there involved. In *Lyon* v. *Ham-*

*mond and Blue Island Railroad Co.* 167 Ill. 527, involving condemnation proceedings for land for public utility purposes, the rule was enunciated that the railroad could not prove what it had paid other property owners for right of way along the same road. This court went on to point out that the sale would not be a fair test of market value, inasmuch as the amount paid "includes any damages that may be claimed to the residue of the land owner's premises, and often does not represent the mere market value of the portion sold."

On the basis of the ruling in the *Lyon case* it is apparent the court did not err in refusing to hear the evidence offered. The rule has been consistently followed in Illinois since that time. *South Park Comrs.* v. *Ayer*, 237 Ill. 211; *Mauvaisterre Drainage and Levee Dist.* v. *Wabash Railway Co.* 299 Ill. 299.

The appellants contend that the sole question to be determined by the jury was the amount of compensation to be paid appellants for their land and any examination of witnesses regarding the cost of improvement to the land for dwelling purposes was inadmissible and prejudicial error, inasmuch as it brought before the jury a collateral issue which it was not called upon to determine. It appears that in the question of use the witnesses were agreed that the highest and best use to which the land could be put was for subdivision purposes. Witnesses for the appellants testified that in determining this they took into consideration the cost of laying out a subdivision. The appellee then cross-examined these witnesses on such cost and put its own witness on the stand to testify that the entire cost of the subdivision would be $534,508.

The decision on this question, too, has been determined by this court. In *Smith* v. *Sanitary Dist,* 260 Ill. 453, we reversed the lower court on the ground that it was erroneous to refuse to permit the defendant to cross-examine witnesses as to the cost of removing trees in an effort to

show that wooded property was worthless because it would cost more to remove trees than the land would bring when cleared. In *Forest Preserve Dist.* v. *Wallace,* 299 Ill. 476, we discussed testimony which showed conclusively that it would require a considerable outlay of money to prepare and plan land for sale as lots which, of necessity, would increase the sales price of such lots. In *City of Chicago* v. *Lehmann,* 262 Ill. 468, there was testimony that the highest and best use of the lots being condemned was for flat buildings. We said that in order to test the value of the opinions of experts it was competent to show the income that would be derived from property on their theory, since it appeared from the testimony that values were largely controlled by income. We see nothing in the facts of this case which make it error for the court to allow testimony as to the cost of improving the property for the sale of lots for dwelling purposes when the claims for compensation involve the sale of such land for such purpose.

The appellants contend that admission of evidence to determine value by the witness construction engineer for Northwestern University, who testified concerning the sale of 132 acres to Northwestern University when Northwestern University owned a portion of the property, was error. It appears that of the 132 acres 17.8 per cent was owned by Northwestern University, which purchased the entire property from itself and the remainder of the owners. All the facts regarding the sale of this property were made known to the jury. It was shown that Northwestern University owned a portion of the property and was the purchaser of the entire amount. It has long been settled in this State that where, on cross-examination, all unfavorable facts surrounding the sale have been brought out thereby minimizing its value, the exercise of the trial court's discretion to admit the sale will not be considered as error. (*City of Chicago* v. *Mullin,* 285 Ill. 296.) This case is

controlling here. We need not comment further on the question of whether or not the ownership of a small portion of the whole will justify invalidating the testimony as to the sale of the whole.

We have examined the other allegations of error urged by the appellants in this court. We do not find merit in the contentions as to errors in the admission of evidence and instructions to the jury. We have given consideration to the principal errors upon which appellants depend and, in view of our holding thereon, the judgment of the trial court is affirmed.

*Judgment affirmed.*